**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0655n.06
Filed: August 3, 2005

**No. 04-4053**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BLANCHE CASTLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF |
| | ) | ORDER OF THE BENEFITS REVIEW |
| JOCKEY HOLLOW COAL COMPANY, | ) | BOARD, UNITED STATES |
| OLD REPUBLIC INSURANCE | ) | DEPARTMENT OF LABOR |
| COMPANY, and DIRECTOR, OFFICE OF | ) | |
| WORKERS' COMPENSATION | ) | |
| PROGRAMS, UNITED STATES | ) | |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondents. | ) | |

Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges, and HOOD,[*] District Judge.

PER CURIAM. The petitioner, Blanche Castle, seeks review of the Benefits Review Board's order affirming an administrative law judge's ruling that she is not entitled to benefits under the Black Lung Benefits Act. The petitioner's husband, Bobby Castle, worked underground in the coal mines for 17 years, ending in 1978, and died in 2000. The petitioner claims that she is entitled to benefits because her husband's death was hastened by pneumoconiosis and because the Department of Labor violated her due process rights

---

[*]The Hon. Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

by reopening Bobby Castle's original black lung benefits case in 1987.  We find that the administrative record contains substantial evidence to support the denial of benefits by the ALJ and the Benefits Review Board, and we therefore decline to overturn those decisions.

During his 17 years as an underground coal miner, Bobby Castle worked at the "face" of the mine and was thus exposed to large amounts of coal dust. Blanche  Castle testified that when her husband came home from the mines, he would have black dust everywhere, all over his clothes and in his ears, nose, and mouth. She further testified that her husband would cough and spit up "coal dirt."  In 1978, Bobby Castle stopped working in the coal mines because he was experiencing shortness of breath.

Castle's health steadily deteriorated in the late 1980's and 1990's.  In spite of his poor health, Castle continued to smoke regularly, estimated at the rate of a pack to a pack and a half daily for 40 to 50 years. In 1989, Castle had a heart attack and underwent open heart surgery.  In the late 1990's, he was on dialysis for chronic renal failure and also under treatment for congestive heart failure, diabetes, chronic obstructive pulmonary disease (including smoker's bronchitis and emphysema), high blood pressure, and various intestinal diseases, as well as other medical conditions outlined in his medical reports.

When Bobby Castle died in his home in March 2000, no autopsy was performed, but on the death certificate, the coroner listed "respiratory arrest, cardiac arrest, and black lung" as the causes of death.  Blanche Castle filed a survivor's claim for black lung benefits that was denied by an ALJ despite the judge's finding that Castle suffered from "legal

pneumoconiosis" caused by his coal mine employment, because the judge also found that his death was not hastened by his pneumoconiosis.

The record contains the opinions of four doctors, but only two, Dr. Jurich and Dr. Rosenberg, were assigned much weight by the administrative law judge. In determining that Castle suffered from pneumoconiosis, the administrative law judge relied primarily on the testimony of Dr. Jurich, the miner's personal physician, whose specialty was family medicine and who had no special expertise in pulmonary disease. Dr. Jurich treated Castle from 1985 to 1998, during which time he saw Castle several times a year. He testified that he had diagnosed Castle with chronic obstructive pulmonary disease (COPD) because of Castle's chronic shortness of breath and feelings of "smothering" and because of the sounds he could hear when listening to Castle's lungs. His conclusion that Castle's COPD was related to his work as a coal miner was based principally on his patient's history as an underground miner, although Jurich acknowledged that Castle's long and persistent history of smoking was also a cause of his COPD. As the administrative law judge noted, Dr. Jurich's COPD diagnosis fell under the definition of legal pneumoconiosis for purposes of the Black Lung Benefits Act. To explain his reason for according dispositive weight to Dr. Jurich's diagnosis, the administrative law judge noted:

> During his deposition, Dr. Jurich detailed the precise manner he employed when diagnosing COPD arising in part out of coal mine employment. His candid testimony demonstrated his impartial and accurate approach to diagnosing the existence and etiology of Miner's COPD. Through his status as Miner's treating physician for fourteen years, Dr. Jurich has gained superior and relevant information regarding Miner's physical condition. Even

though he holds no special credentials in the area of pulmonary medicine, I accord controlling weight to Dr. Jurich's *well-reasoned and well-documented opinion* based on the information he gained as Miner's treating physician. (Emphasis added.)

The deference paid by the ALJ to the opinion of Dr. Jurich as "well-reasoned and well-documented" is somewhat puzzling, however, given that Jurich was not a pulmonary specialist; that he discounted, without scientific reason, overwhelming x-ray evidence dating back to 1975 that was negative for pneumoconiosis; that he had not treated Bobby Castle during the last two years of his life and gave an opinion concerning his condition without knowing the cause of death; and that he conceded in a deposition that he had never actually diagnosed pneumoconiosis in Castle or in any of his other patients. Also puzzling is the judge's decision *not* to credit Dr. Rosenberg's opinion that Castle's voluminous medical records reflected no evidence of clinical pneumoconiosis, even though the judge recognized that Dr. Rosenberg *was* a board-certified pulmonary specialist who had based his diagnosis on a thorough review of the x-ray reports and Castle's extensive medical records. At the same time, the ALJ credited Rosenberg's conclusion that pneumoconiosis did not hasten the miner's death and based the decision to deny benefits entirely on Rosenberg's opinion.

Nevertheless, despite these apparent inconsistencies in the ALJ's analysis of the medical records in this case, the record fully supports the judge's determination that "[d]uring the last several years of life, Mr. Castle was in a downward spiral with progressive renal failure requiring dialysis, multiple episodes of congestive heart failure, ventricular

arrhythmias, various occurrence of sepsis, anemia, etc.," and that pneumoconiosis played no part in his death. Because there is substantial evidence to support the decision, it must be upheld.

Nor do we find any merit to the petitioner's contention that the Department of Labor violated her right to due process by reopening Bobby Castle's benefits case in 1987. He had actually filed for benefits under the federal Black Lung Benefits Act twice during his lifetime and was ultimately denied benefits both times. He first applied in 1978 and was granted benefits while the agency attempted to contact his previous employer, Jockey Hollow Coal Company, to notify it of the claim. However, Jockey Hollow did not respond to the Department's notices. In 1981, a supervisory claims examiner with the Department of Labor identified Old Republic Insurance Company as the entity providing coverage for Jockey Hollow and promptly sent Old Republic notice of Castle's claim. It does not appear from the record that Old Republic made any reply to the notice. Because the responsible party failed to respond, the Department of Labor informed Castle that he would receive his benefit payments from the Black Lung Trust Fund.

In August 1987, however, the Department of Labor "reopened" Castle's case and issued an "amended notice" of the claim to Old Republic. This time, Old Republic responded, objecting that Castle was not entitled to benefits. In early 1988, the Deputy Commissioner of the Employment Standards Administration issued a determination that Castle was eligible for benefits, and Old Republic appealed. After reviewing the copious

evidence produced by Old Republic, an administrative law judge issued a decision in 1990 finding that Castle had failed to establish the existence of pneumoconiosis. The Benefits Review Board affirmed the administrative law judge's decision to deny Castle benefits. In September 1993, Castle filed a second claim for benefits, which was denied by an administrative law judge in 1995, based as before on a determination that Castle had once again failed to establish that he suffered from pneumoconiosis.

The petitioner now contends that she was deprived of her due process rights because she was not able to challenge the Department of Labor's decision to reopen her husband's black lung case in 1987. Central to this contention is the fact that under the law in effect at the time of the initial award, the petitioner would have been automatically eligible for survivor's benefits without having to prove that pneumoconiosis hastened or caused her husband's death. However, she cites no case law or authority for her assertion that the Department of Labor violated her due process rights, and we conclude that her claim must fail.

The due process clause of the Fourteenth Amendment protects against the deprivation of only those "interests that a person has already acquired in specific benefits." *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972). As the Department of Labor correctly points out, the petitioner was not a party to the earlier claims because she had no protected property interest in them. "To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral

expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Until her husband died, the petitioner had no legitimate claim to his black lung benefits.

Furthermore, the petitioner's right to survivor's benefits was derivative of her husband's rights to benefits under the Black Lung Act. Hers was not a separate entitlement, but rather was based upon her husband's entitlement, which was simply transferred to her when he died. Any interest that *she* had in her husband's black lung benefits was thus adequately protected by the fact that *he* had the ability and opportunity to challenge the decisions of the Department of Labor. There is no basis on which to find a due process violation under these circumstances.

For the reasons set out above, we decline to overturn the decision of the Benefits Review Board to deny benefits in this case.